UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARED MEMORY GRAPHICS, LLC, | No. C-10-2475 VRW (EMC) |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART CROSS-MOTIONS FOR PROTECTIVE ORDER** |
| APPLE, INC., *et al.*, | |
| Defendants. | **(Docket Nos. 270, 272)** |

This is a patent infringement case brought by Shared Memory Graphics ("SMG") against Apple, Inc., Nintendo of America, Inc., Nintendo Co. Ltd., Sony Corp. of America, Sony Computer Entertainment America Inc., Sony Corp., Sony Computer Entertainment Inc., and Sony Semiconductor Kyushu Corp., Ltd. (collectively, "Defendants"). The two patents-in-suit were first patented by Alliance Semiconductor Corporation, which later sold all rights to the patents to Acacia Patent Acquisition Corporation ("Acacia"). *See* Compl. ¶ 45. Acacia then sold all of the rights to the patents to SMG. *See id.* ¶ 47.

Currently pending before the Court is a dispute between the parties over the terms of a protective order to govern confidential information produced or otherwise provided in this case. The parties have a disagreement with respect to three issues: (1) whether SMG's in-house counsel should have access to Defendants' highly confidential information, (2) whether Defendants' outside counsel and/or expert witnesses may view the highly confidential or confidential information of other Defendants, and (3) whether the patent prosecution bar should include a bar on reexamination of the patents-in-suit by SMG's litigation counsel.

**I.  DISCUSSION**

A.  Legal Standard

Under Federal Rule of Civil Procedure 26(c), "[a] party or any person from whom discovery is sought may move for a protective order," and "[t]he court may, for good cause, issue an order to protect a party from annoyance, embarrassment, oppressions, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).

In the instant case, the parties do not dispute that a protective order is needed to govern the production of confidential information in this case. The parties do, however, disagree as to whether certain terms should be included in the protective order. As proponents of the terms, Defendants have the burden of showing good cause. *See Phoenix Sol'ns. Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D. 568, 575 (N.D. Cal. 2008) (noting that "[t]he burden of demonstrating the need for protection from discovery is placed on the party seeking a protective order, not on the party opposing the order").

B.  Access by SMG's In-House Counsel

The parties' first dispute is whether the protective order should include a term barring SMG's in-house counsel, Bradley Botsch, from accessing Defendants' highly confidential information. In resolving this issue, the Court is guided by *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992). In accordance with *Brown Bag*, the Court must balance the risk to Defendants if their confidential materials are disclosed against the risk to SMG if the materials are not disclosed. *See id.*

The Court rejects SMG's suggestion that there is no risk to Defendants because SMG is not a direct competitor. As explained by one court, where the party asserting infringement is in the business of acquiring intellectual property and enforcing it against other entities using the allegedly infringing technology, "[t]here is little doubt" that the alleged infringer's confidential information could be of value. *ST Sales Tech Holdings, LLC v. Daimler Chrysler Co.*, No. 07-346, 2008 WL 5634214, at *6 (E.D. Tex. Mar. 14, 2008); *see also Intel Corp. v. VIA Techs., Inc.*, 198 F.R.D. 525, 530 (N.D. Cal. 2000) (noting that, if plaintiff's in-house counsel were given information about technical aspects of defendant's products, defendant's licensing agreements, and marketing

information, that "may provide [plaintiff] a competitive advantage in negotiating related licenses in the future"). On the other hand, to the extent SMG asks that Mr. Bosch be given access to only limited financial information – more specifically, sales and profit information for the accused products at issue – in order participate fully in settlement discussions, the risk to Defendants is substantially lessened.

Balancing the risk to each side, the Court concludes that the proper balance is to include a provision that generally bars SMG's in-house counsel from accessing Defendants' highly confidential information. However, there can be exceptions to the bar where the risk of competitive advantage is minimal when compared to the Plaintiff's need to make the information accessible to in-house counsel, and the parties should meet and confer to discuss exceptions as the need arises. For the benefit of the parties, the Court notes that it deems the limited financial information sought by SMG – *i.e.*, the sales and profit information for the accused products – to be such an exception. Unlike technical aspects of Defendants' products, the focused financial information sought here will pose little competitive risk and, at the same time, provide material information essential to settlement negotiations in which in-house counsel would be expected to participate.

C.    <u>Access by Defendants' Outside Counsel and Expert Witnesses</u>

The parties' second dispute is whether one Defendant's outside counsel and expert witnesses should be able to view the highly confidential or confidential information of the other Defendants. SMG argues that there should be such access, both as a matter of administrative convenience and as a substantive matter.

The Court rejects SMG's argument that access should turn on administrative convenience. While SMG may have to prepare different versions of one filing to accommodate each Defendant's confidential information, that is a burden that SMG implicitly accepted in bringing suit in the first place against the numerous Defendants and in seeking to utilize their confidential information of some Defendants in conducting discovery against other Defendants.

On the substantive question, the Court will not endorse a blanket rule that automatically allows all Defendants' confidential information to be shared, even if only with the other Defendants' outside counsel and experts. Such disclosure should be governed by the "reasonably necessary"

3

1  standard set forth in Model Protective Order ¶ 7.2.  The parties shall meet and confer to modify the
2  language of ¶ 7.2 to make clear that its provisions extend disclosure to co-Defendants' outside
3  counsel and experts.

4  D.  Patent Prosecution Bar

5  The parties' final dispute is whether the protective order should include a term barring
6  SMG's litigation counsel from engaging in patent prosecution.  SMG does not oppose a patent
7  prosecution bar, so long as an exception is made that would permit its outside counsel to participate
8  in any reexamination proceedings of the patents-in-suit.

9  Courts have taken varying approaches with respect to whether counsel for the party asserting
10 infringement should be barred from participating in reexamination proceedings.  *Compare, e.g.*, *Pall*
11 *Corp. v. Entegris, Inc.*, 655 F. Supp. 2d 169, 173 (E.D.N.Y. 2008) (holding that the prosecution bar
12 would not extend to reexamination), *with MicroUnity Sys. Eng'g, Inc. v. Dell. Inc.*, No. 04-120,
13 2005 WL 2299455 (E.D. Tex. Aug. 1, 2005) (holding that the prosecution bar applies equally to
14 reexaminations as it does to new applications).

15 Those courts holding that counsel is *not* barred have typically focused on the fact that patent
16 claims cannot be broadened in reexamination proceedings but rather only narrowed, and thus the
17 risk of conferring a tactical advantage to the patent holder's counsel is minimal.  *See Pall Corp.*, 655
18 F. Supp. 2d at 173 (noting that, "unlike prosecution of an initial patent application, the Patent Act
19 expressly curtails the scope of reexamination, prohibiting any claim amendment that would enlarge
20 the scope of the initial patent"); *see also Mirror Worlds, LLC v. Apple, Inc.*, No. 08-88, 2009 WL
21 2461808, at *2 (E.D. Tex. Aug. 11, 2009) (noting that "[c]laims can only be narrowed during
22 reexamination; they cannot be broadened" and therefore concluding that "the risk of harm to Apple
23 is already greatly limited"); *Document Generation Corp. v. Allscripts*, No. 08-479, 2009 WL
24 1766096, at *2 (E.D. Tex. Jun. 23, 2009) (stating that, "[b]ecause the reexamination process
25 prohibits claim amendments that would enlarge the scope of the initial patent, Defendants' fears of
26 expanded claim scope coverage are largely misplaced").

27 While it is true that patent claims cannot be broadened in reexamination, the Court is not
28 convinced that that fact is dispositive to the issue.  Claims may still be restructured in reexamination,

and, in a given case, a patent owner may well choose to restructure claims in a manner informed by the alleged infringer's confidential information gleaned from litigation. *See, e.g.*, *MicroUnity*, 2005 WL 2299455, at *4 (noting that litigation counsel with access to defendants' confidential information "will inevitably [amend or supplement claims to distinguish prior art] in a way that they believe preserves litigation options with respect to [defendants'] products"). *See also* Robert Greene Sterne et al., *Reexamination Practice with Concurrent District Court or USITC Patent Litigation*, ACPA Meeting, Jan. 26, 2009, at 16[1] (noting that "in-depth knowledge of a competitor's highly confidential technical information, combined with the ability to amend claims, would . . . convey a dangerously unfair advantage to the recipient of such information"). Hence, access to confidential information could still provide a tactical advantage to the patent holder in its effort in reexamination to navigate between prior art and its infringement claims, although the risk of advantage would appear to be somewhat marginal.

The Court thus finds persuasive the analysis taken by the court in *Crystal Image Technology, Inc. v. Mitsubishi Electric Corp.*, No. 08-307, 2009 U.S. Dist. LEXIS 32972 (W.D. Pa. Apr. 17, 2009). There, the court acknowledged "the majority trend recognizing that the nature of the reexamination process [*i.e.*, narrowing claims and not broadening them] mitigates against broadly stated concerns of unfair advantage." *Id.* at *7. However, the court ultimately deemed "certain limitations regarding litigation counsel's participation in the reexamination process . . . appropriate." *Id.*

First, the court "restrict[ed] litigation counsel's participation in the reexamination process to instances in which it is the *opposing party* who initiates reexamination of a patent falling within the scope of the proposed protective order." *Id.* at *9 (emphasis added). The court indicated that when it is the opposing party who seeks reexamination, then the reexamination is really part and parcel of the litigation at issue. *Id.* The court also indicated that it would be unfair to force the patent owner to simultaneously defend before the PTO and the court with different counsel. *See id.* But "[s]hould anyone other than Defendant seek reexamination . . . , the justifications for allowing trial counsel to

---

[1] Available at www.reexamcenter.com/wp-content/uploads/2009/08/ACPC-Reexam-Paper.pdf.

5

participate are substantially undermined." *Id.* at *8-9. The court pointed out that the patent owner could initiate reexamination to secure a tactical advantage. *See Crystal Image*, 2009 U.S. Dist. LEXIS 32972, at *8-9; *see also Pall Corp.*, 655 F. Supp. 2d at 174 (in dicta, agreeing that a reexamination bar would be warranted if "a plaintiff patent-owner affirmatively placed his patents into reexamination, . . . attempting to re-craft them based upon his review of defendant's confidential litigation discovery [and] . . . gain a tactical advantage over the infringement defendant "). The limitation imposed by the Court prevents this scenario.

Second, the court permitted litigation counsel to participate in reexamination "preconditioned on their acceptance of an express legal obligation . . . not to rely [during reexamination] in any way on confidential information supplied by the opposing party through the course of this litigation." *Id.* at *9. Thus, the court directed the parties to include a provision that "any individual's participation in reexamination proceeding(s) . . . is expressly conditioned on his/her/its legal obligation, established by Order of the Court, not to use in any way an opposing party's Confidential Attorney Eyes Only Information to draft new claims, or to amend previously existing claims, through the reexamination process." *Id.* at *10.

The Court concludes that the two restrictions above are appropriate for the instant case. The first restriction is appropriate for the reasons identified in *Crystal Image*. It prevents SGM from unilaterally employing any tactical advantage gleaned from confidential information obtained in the litigation. Conversely, it also limits any tactical advantage Defendants might seek to gain by initiating reexamination proceedings and forcing SMG to obtain new and additional counsel therein. Indeed, in its papers, SMG has identified only a concern about a reexamination initiated by or on behalf of Defendants, and not, *e.g.*, by third parties or on its own accord. *See* Pl.'s Mot. at 1 (asserting that "Defendants want the ability to initiate a reexamination and use it to disqualify SMG's trial counsel"). As for the second restriction, it is also appropriate to prohibit SMG's counsel from unfair use in any reexamination proceeding of highly confidential information obtained in this litigation.

Accordingly, the Court orders that the parties meet and confer to reach agreement on a provision that allows SMG's outside counsel to participate in reexamination proceedings in accordance with the above.

## II. CONCLUSION

For the foregoing reasons, the Court **GRANTS** in part and **DENIES** in part both parties' motions regarding the terms of a protective order to govern the production of confidential information in this case.

This order disposes of Docket Nos. 270 and 272.

IT IS SO ORDERED.

Dated: November 12, 2010

_____
EDWARD M. CHEN
United States Magistrate Judge