UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARED MEMORY GRAPHICS LLC, | No. C-10-2475 VRW (EMC) |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANTS' MOTIONS TO COMPEL SUPPLEMENTAL INFRINGEMENT CONTENTIONS** |
| APPLE, INC., *et al.*, | |
| Defendants. | **(Docket Nos. 295, 310, 316)** |
| _____/ | |

Plaintiff Shared Memory Graphics ("Plaintiff" or "SMG") brought this patent infringement case against Apple, Inc., Nintendo of America, Inc., Nintendo Co. Ltd., Sony Corp. of America, Sony Computer Entertainment America Inc., Sony Corp., Sony Computer Entertainment Inc., and Sony Semiconductor Kyushu Corp., Ltd. Alliance Semiconductor Corporation first patented the two inventions of concern here, and later sold all rights to the patents to Acacia Patent Acquisition Corporation ("Acacia"), who then sold them to SMG. *See* Compl. ¶¶ 45, 47. Pending before the Court are Motions to Compel Supplemental Infringement Contentions, filed by the Sony Defendants ("Sony") and the Nintendo Defendants ("Nintendo") (collectively "Defendants" for purposes of this Order). A hearing on these motions was held on December 15, 2010. After considering the parties' briefs, the arguments raised at the December 15, 2010 hearing on these motions, and the entire record of this case, the Court **GRANTS** each motion for the reasons set forth herein.

///
///
///
///

## I. FACTUAL AND PROCEDURAL BACKGROUND

SMG alleges infringement of U.S. Patent No. 5,712,664 entitled "Shared Memory Graphics Accelerator System" (the "664 patent") and U.S. Patent No. 6,081,279, also entitled "Shared Memory Graphics Accelerator System" (the "279" patent). It describes the patents as claiming memory systems (comprising a central processing unit and integrated display memory element) that contain a graphics accelerator with both on-chip and off-chip frame buffer memory elements for conducting processing graphical data.

A key feature of the graphics accelerator described by the '664 patent is its ability to selectively distribute display data to each memory element based on pre-defined criteria via a "data distribution bus." *See* Compl. ¶ 46-47; *see also* '664 patent at 1:36-5, 2:64-3:17. The '664 patent also has a limitation requiring the distribution criteria to direct data for fast-moving images to the on-chip frame buffer memory element and data for slow-moving images to the off-chip element.[1] '664 patent at 6:41-44. Key limitations on the asserted claims of the '279 patent include its requirement that the on-chip frame buffer have a higher refresh frequency than the off-chip frame buffer. '279 patent at 5:60-6:23, 6:55-7:12, 7:19-8:4.

Plaintiff accuses at least two products sold by Sony and at least two products sold by Nintendo of infringing the '664 and '279 patents.[2] *See id.* ¶¶ 74, 83. Pursuant to Patent Local Rule 3-1, SMG served and supplemented its "Disclosure of Asserted Claims and Infringement Contentions" setting forth the patent claims allegedly infringed by Defendants and generally identifying the purportedly infringing aspects of Defendants' systems. These contentions were accompanied by claim charts required by Local Rule 3-1(c). Defendants challenge SMG's disclosures and charts as inadequate, and ask the Court to compel SMG to provide more detailed contentions and stay discovery until SMG does so.

---

[1] Claim 2 of the '279 patent contains a similar limitation.

[2] SMG asserts Claim 3 of the '664 patent and Claims 2 and 6 the '279 patent against Defendants. SMG also Claim 7 of the '279 patent against Sony and Claim 8 of the '279 patent against Nintendo.

## II. DISCUSSION

The Patent Local Rules are applicable here because Plaintiff alleges patent infringement. *See* Pat. L.R. 1-2. Patent Local Rule 3-1 governs the disclosure of asserted claims and infringement contentions ("ICs"). It provides that, in the disclosure, the party asserting infringement must: (a) identify each claim that is being infringed; (b) identify each accused product for each claim; (c) provide a chart identifying *specifically where* each limitation of each asserted claim is found in each accused product; and (d) specify whether infringement is literal or based on the doctrine of equivalents. *See* Pat. L.R. 3-1 (emphasis added). The rule provides a "streamlined" mechanism to replace the "series of interrogatories that defendants would likely have propounded in its absence." *FusionArc, Inc. v. Solidus Networks, Inc.*, 2007 U.S. Dist. LEXIS 28970, *5-6 (N.D. Cal. Apr. 5, 2007) (citation omitted). Its purpose has been stated variously. It is designed to "hasten resolution on the merits" (*id.*) by providing "structure to discovery and enable the parties to move efficiently toward claim construction and the eventual resolution of their dispute. *Id.*, *quoting American Video Graphics, L.P. v. Electronic Arts, Inc.*, 359 F. Supp. 2d 558, 560 (E.D. Tex. 2005). It is also intended to require the party claiming infringement "to crystallize its theories of the case early in the litigation and to adhere to those theories once disclosed." *Bender v. Advanced Micro Devices, Inc.*, 2010 U.S. Dist. LEXIS 11539, 1-2 (N.D. Cal. Feb. 1, 2010); *see also Alberta Telecomms. Research Ctr. v. Rambus, Inc*., No. C 06-02595, 2007 U.S. Dist. LEXIS 89283, 2007 WL 4170564, at *1 (N.D. Cal. Nov. 19, 2007). In that regard, a plaintiff is required to include in its infringement contentions all facts known to it, including those discovered in its pre-filing inquiry. *Renesas Technology Corp. v. Nanya Technology Corp.*, 2004 U.S. Dist. LEXIS 23601 at *8 (N.D. Cal. 2004).

As such, Rule 3-1 performs the traditional role of contention interrogatories. However, there appear to be a number of cases which suggest that ICs may be assigned a more substantive role -- one which invokes early vetting of cases by effectively serving as one way to implement Federal Rule of Civil Procedure 11. *See Bender v. Maxim Integrated Foods*, 2010 WL 2991257 (N.D. Cal. 2010) (ICs can reduce potential for "fishing expeditions"); *Network Caching Tech., LLC v. Novell, Inc.*, 2002 U.S. Dist LEXIS 26098 at *12 (N.D. Cal. 2002) (Rule 11 establishes minimum level of

detail required by Local Rule 3-1). Other courts, however, have refused to equate the obligations under Local Rule 3-1 with those under Rule 11. *FusionArc, supra,* 2007 WL 2052900 at *2 ("a plaintiff may satisfy its obligations under RULE 3-1 whether or not it conducted a pre-filing investigation sufficient to comply with Rule 11," citing cases illustrative of a divergence between the two).

This Court is reluctant to assign a more substantive role to Rule 3-1 at least where, as here, discovery has been assigned to a Magistrate Judge and bifurcated from substantive rulings of the assigned District Judge. Under these circumstances, application of Rule 11 should be left to the assigned judge and not handle *sub rosa* via the instant motion under Local Rule 3-1. Importantly, treating the instant motion as a discovery dispute is consistent not only with Judge Seeborg's ruling in *FusionArc*, it preserves the important function of ICs discussed above, thereby facilitating *inter alia* the maturation of substantive motions which might ensue. For instance, by compelling the plaintiff to crystallize its theory of infringement and flesh out all the facts that it has to supports its theories, ICs can lay the groundwork for a subsequent Rule 11 by exposing early on an inadequate pre-filing inquiry. Furthermore, by specifically identifying components and aspects of circuitry purporting to perform certain elements and limitations of the patent claims at issue, the ICs may lay the groundwork for an early motion for summary judgment and or claims construction as to a few select claims.

Turning to the question at hand, while there is some ambivalence in the case law as to whether Local Rule 3-1 requires reverse engineering or its equivalent, all courts agree that the degree of specificity under Local Rule 3-1 must be sufficient to provide reasonable notice to the defendant why the plaintiff believes it has a "reasonable chance of proving infringement." *View Engineering, Inc. v. Robotic Vision Systems, Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000). It must be sufficient to raise a "reasonable inference that all accused products infringe" (*Antonious v. Spalding & Evenflo Cos., Inc.*, 275 F.3d 1066, 1075 (Fed. Cir. 2002)). Rule 3-1 does not necessarily require the patent holder to produce evidence of infringement, but it must map specific elements of Defendants' alleged infringing products onto the Plaintiff's claim construction. *See Samsung SDI v. Matsushita Elec. Indus. Co.*, 2006 WL 5097360, *4 (C.D. Cal. 2006).

So viewed, there are several aspects of Plaintiff's ICs that contain the requisite specificity under Rule 3-1. Where Plaintiff has identified specific chips (*e.g.*, by manufacturer and model number and/or by its physical location on the circuit board) which allegedly constitute particular elements of a claim (*e.g.*, off-chip frame buffer), Defendants have been given reasonable and sufficient notice to which they can respond and defend. At the hearing, for instance, Defendants contended *e.g.*, that the particular chip identified by Plaintiff cannot possibly perform the contended function. This is precisely what ICs are designed to accomplish. This could well set up an early motion for summary judgment or partial summary adjudication on affected claims.

However, Defendants contend, and the Court generally agrees, that several of Plaintiff's ICs are too vague to provide fair notice as to what components and circuitry of the accused products infringe their patents. For instance, the claim charts fail to specifically identify the display data distribution bus limitation[3] in Defendants' products. With regard to Sony's Playstation 2 ("PS2"), SMG's chart does not indicate which structures constitute the bus. For example, in SMG's chart depicting the PS2's "GS Pipeline," it is unclear whether the "Memory IF" or other components are part of the bus. *See* Pl.'s ICs, Ex. 2 at 11. If Plaintiff does so contend, this could set up a motion for summary judgment or partial summary adjudication (perhaps in conjunction with claims construction) as to that element -- *e.g.*, whether a data distribution bus can include more than direct connections, such as active components and circuitry. Moreover, the charts do not clearly indicate where data flows among the identified structures. *See id.* at 12. Nor does SMG explain how its charts could be read together to show how the bus connects to an off-chip memory buffer. *See id.* at 8, 11. With regard to Nintendo's Wii and Gamecube, the ICs fail to identify the bus, despite Plaintiff's attempt to reverse engineer Nintendo's "Hollywood chip."[4] *See, e.g.*, Nintendo's Mot. at

---

[3] Claim 3 of the '664 patent contains a limitation stating that, in the data distribution bus, "the graphics accelerator selectively distributes display data to the on-chip game buffer memory element and to the off-chip frame buffer element based on predefined display distribution criteria."

[4] SMG improperly failed to include information from its reverse engineering analysis in its ICs, noting that it is withholding its report under the word product doctrine. The ICs "must reflect all facts known to the plaintiff including those discovered in their [Rule 11] pre-filing inquiry, and contain sufficient detail regarding the plaintiff's theory of infringement to provide defendants' with notice of infringement beyond the claim language itself." *Samsung SDI v. Matsushita Elec. Indus. Co.*, 2006 WL 5097360, *4 (C.D. Cal. 2006) (citations and quotation marks omitted). Facts are not

5

5-6 (referring to Pl.'s Claim Charts, Ex. 1 at 8-9, and Ex. 5 at 10); *see also* Floyd Decl. ¶ 6 (Docket. No. 246-2).  Rather than provide a meaningful description of its theories, SMG's vague contentions and conclusory statements invite Defendants and the Court merely to *assume* the presence of a data distribution bus.  *See, e.g.,* Wolfe Decl. ¶ 19 ("a data distribution bus . . . . may be buried under other wires inside of the integrated circuit.  In this case . . . the accused products must have one or more data buses that can be identified using schematic block diagrams.").  The Court therefore finds that SMG's disclosure falls short of the level of specificity required by Local Rule 3-1.  *Cf. Bender v. Infineon Techs. N. Amer. Corp.*, No. 09-2112, 2010 WL 964197 at *2 (N.D. Cal. Mar. 16, 2010).

The Court further notes that the ICs are also inadequate inasmuch as Plaintiff contends it need not provide specific contentions for elements modified by a "wherein" clause.  Its citation to *Hoffer v. Microsoft Corp.*, 405 F.3d 1326, 1329-30 (Fed. Cir. 2005) is inapposite.  As the court held therein, where the wherein or whereby clause does not merely state the result of a patented product, but is a part of the process itself, stating a condition that is material to patentabilty, it cannot be ignored.  *Id.* at 1329.  Here, there is at least a credible assertion that the "selective distribution" of data between the on-chip and off-chip frame buffers and the higher refresh frequency of the on-chip frame buffer than the off-chip buffer state conditions material to patentability, not merely the result or purpose of the process.  Infringement contentions must address such conditions.[5]

### III.  CONCLUSION

The Court accordingly **GRANTS** Defendants' Motions to Compel Supplemental Infringement Contentions.  Plaintiff shall file an Amended Disclosure of Claims and Infringement Contentions consistent with this Order no later than January 31, 2011.  The Amended Disclosure shall include a certification that the contentions includes all facts Plaintiff now has in its knowledge and possession to supports its contentions.  Thereafter, Plaintiff may seek to amend its Infringement Contentions only for good cause shown, pursuant to the Patent Local Rules.  Facts known but

---

protected by the work product doctrine.  They must be disclosed under Local Rule 3-1.

[5] That the Court holds ICs must include these conditions for Local Rule 3-1 purposes is without prejudice, of course, to ultimate claim construction which is left to the assigned trial judge.

withheld from the ICs would not qualify for good cause.  The Court further orders that discovery is stayed with respect to Nintendo and Sony until February 1, 2011.

This Order disposes of Docket Nos. 295, 301, and 316.

IT IS SO ORDERED.

Dated:  December 30, 2010

_____
EDWARD M. CHEN
United States Magistrate Judge