Grant Kinsel, Bar No. 172407
gkinsel@perkinscoie.com
Joseph Hamilton, Bar No. 211544
jhamilton@perkinscoie.com
Michael Song, Bar No. 243675
msong@perkinscoie.com
**Perkins Coie LLP**
1888 Century Park East, Suite 1700
Los Angeles, CA 90067-1721
Telephone: 310.788.9900
Facsimile: 310.788.3399

Attorneys for **Nintendo Co., Ltd.,**
and **Nintendo of America Inc.**

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Shared Memory Graphics, llc** | Case No. 3:10-cv-02475 MMC |
| *Plaintiff,* | **Nintendo's notice of motion and motion to strike portions of Shared Memory's infringement contentions** |
| *v.* | |
| **Apple Inc.,** *et al.* | |
| *Defendants.* | Date:   Friday, August 26, 2011<br>Time:   9:00 a.m.<br>Crt. Rm: 7, 19th Floor |
| | Hon. Maxine M. Chesney |
| and **related counterclaims** | |

**TABLE OF CONTENTS**

Page

MEMORANDUM OF POINTS AND AUTHORITIES ...................... 1

1.    INTRODUCTION.................................................................. 1

2.    FACTS................................................................................ 2

    A.    The parties and patents-in-suit ................................ 2

    B.    Overview of computer graphics systems ................................ 3

    C.    The patents-in-suit relate to a purported improvement in graphics processing ........................................ 4

    D.    The Court found that Shared Memory's infringement contentions failed to comply with the Patent Local Rules ........................................ 7

    E.    Shared Memory's amended infringement contentions fail to identify where key limitations can be found in the GameCube and Wii ........................................ 8

        (1)    Shared Memory fails to adequately identify where the data distribution bus limitation can be found in the accused devices .................................. 9

            (a)    For both the GameCube and Wii, Shared Memory failed to identify a data distribution bus connected to the on-chip memory ........................................ 10

            (b)    Shared Memory fails to identify a data distribution bus to the Napa memory in the Wii ........................................ 13

        (2)    The "selectively distributes," and "fast-and-slow-moving images" limitations ............................. 14

        (3)    The "refresh frequency" and "power dissipation" limitations ........................................ 17

3.    ARGUMENT ........................................................................ 18

    A.    The Patent Local Rules and Rule 11 establish the minimum standards for infringement charts...................... 18

    B.    Shared Memory's amended contentions do not identify a data distribution bus............................................... 19

**TABLE OF CONTENTS**
(continued)

Page

(1) Shared Memory's contentions regarding a data distribution bus to the alleged on-chip memory are insufficient and should be stricken ..................... 20

(2) Shared Memory's contentions regarding the data distribution bus to the alleged Napa off-chip frame buffer are insufficient and should be stricken ........................................................................ 22

(3) Shared Memory's contentions related to the "selectively distributes," "refresh frequency," and "power dissipation" limitations should be stricken ........................................................................ 23

C. Discovery should be stayed pending resolution of this motion ........................................................................ 24

4. CONCLUSION ........................................................................ 24

## Cases

*Bender v Infineon Techs. N. Am. Corp.*, No. 09-2112 JW, 2010 WL 964197
(N.D. Cal Mar. 16, 2010)) ....................................................................21

*Bender v. Maxim Integrated Prods., Inc.*, No. 09-01152-SI, 2010 WL
2991257 (N.D. Cal. July 29, 2010) ....................................................20

*Intertrust Techs. Corp. v. Microsoft Corp.*, No. 01-1640-SBA, 2003 WL
23120174 (N.D. Cal. Dec. 1, 2003) ....................................................18

*Micro Int'l v. Monolithic Power Sys.*, 467 F.3d 1355 (2006) .......................19

*NEC Corp. v. Hyundai Elec.*, 30 F.Supp.2d 561, 563 (E.D. Va. 1998) ..........4

*Network Caching Tech., LLC v. Novell, Inc.*, No. 01-2079-VRW, 2002 WL
32126128 (N.D. Cal. Aug. 13, 2002)....................................................18

## Regulations and Rules

Fed. R. Civ. P. 11 ................................................................ 18, 23

Fed. R. Civ. P. 16 ........................................................................19

Fed. R. Civ. P. 37 ........................................................................19

Patent L.R. 3-1 ................................................................ 7, 18, 21

**NOTICE OF MOTION**

Please take notice that on Friday, August 26, 2011, at 9:00 a.m. in Court Room 7, 19th floor, of the above-entitled Court, Nintendo will, and hereby does, move the Court for: (1) an order striking portions of Shared Memory's infringement contentions; and (2) precluding Shared Memory from amending its infringement contentions.

This motion is made on the following grounds: The Court ordered Shared Memory to amend its infringement contentions with respect to several key claim limitations that the Court found did not comply with Patent Local Rule 3-1. Six months later, Shared Memory has not meaningfully amended its contentions, which remain insufficient for exactly the same reasons that the Court previously found them insufficient. Further, given that Shared Memory has now amended its infringement contentions against Nintendo *three times*, and each time has been unable to comply with the Patent Local Rules, the Court should strike those portions of the contentions that are non-compliant, and preclude Shared Memory from further amending its deficient contentions.

## MEMORANDUM OF POINTS AND AUTHORITIES

### 1.   INTRODUCTION

Almost six months ago in December 2010, then-Magistrate Chen granted Nintendo and Sony's motions to compel supplemental infringement contentions (the "Order").[1] Judge Chen found that "several of [Shared Memory's infringement contentions] are too vague to provide fair notice as to what components and circuitry of the accused products infringe [its] patents."[2] To remedy these deficiencies, Judge Chen ordered Shared Memory to file "an Amended Disclosure of Claims and Infringement Contentions consistent with this Order.  .  .  ."[3] Judge Chen also stayed discovery from Nintendo and Sony until Shared Memory complied.[4]

Shared Memory has now taken its third bite at the apple.  But, Shared Memory's third set of infringement contentions are defective, do not comply with the Patent Local Rules, and do not comply with Judge Chen's order. In fact, Shared Memory's third set of infringement contentions largely repeat—*verbatim*—the same contentions Judge Chen previously found to be defective. The few changes Shared Memory has made are mere fig leaves. For instance, in some places, Shared Memory adds to the defective disclosures that they are made on "information and belief," as though such boilerplate somehow transforms otherwise deficient disclosures into sufficient disclosures. In other places, Shared Memory adds the disclaimer that the limitations are "too small to be seen." And in

---

[1]    Dkt. # 346.

[2]    *Id*. at 5:9-11.

[3]    *Id*. at 6:20–21.

[4]    *Id*. at 7:1-2.

still other places, Shared Memory plays word jumble with its previous disclosure to manufacture the illusion that there is something new when, in fact, there is not. In short, Shared Memory makes cosmetic changes to try to dress up its defective contentions without providing any meaningful, substantive changes.

Because Shared Memory is either unwilling or unable to make the necessary investment in its case to enable it to comply with the Patent Local Rules, Nintendo requests that the Court: (1) strike the defective portions of Shared Memory's infringement contentions; and (2) preclude Shared Memory from further amending its infringement contentions regarding those limitations.

## 2.   FACTS

### A.   The parties and patents-in-suit.

Nintendo is a world leader in the creation of video-game systems and content. Nintendo created the video-game system the Wii (pronounced "we"), which is one of the best selling video-game systems of all time.

By contrast, Shared Memory is a limited liability entity formed to sue on the two patents in suit, U.S. Patent Nos. 5,712,664 (the "'664 patent") and 6,081,279 (the "'279 patent"). Other than this lawsuit, Shared Memory has no business of any kind.

Acacia, Shared Memory's parent company, formed Shared Memory in Arkansas to sue the defendants in this case. Acacia makes nothing. Acacia sells nothing. Instead, Acacia exists to acquire patents through bankruptcies, trustees' sales, and the like, create shell companies like Shared Memory, and sue for patent infringement. Acacia's subsidiaries are actively litigating cases throughout the country.

Neither Acacia nor Shared Memory had any role in the conception or prosecution of the '664 and '279 patents. Rather, Alliance Semiconductors was the original assignee of the patents. Just before Alliance went out of business, Acacia swooped in to buy dozens of Alliance patents, including the '664 and '279 patents. As discussed below, the patents-in-suit relate to computer graphics systems.

**B.    Overview of computer graphics systems.**

In broad strokes, computer graphics are comprised of tiny individual points called "pixels." Pixels are normally arranged in a grid and are often represented using dots or squares. Pixels are the modern computing equivalent of Georges Seurat's pointillism shown famously in *Un dimanche après-midi à l'Île de la Grande Jatte*.



The thousands of pixels that make up a computer image must be drawn and re-drawn in fractions of a second. This is often accomplished with a special type of memory called a "frame buffer." C.N. Reddy, the inventor of the patents-in-suit, defined a frame buffer as "a special purpose type of memory in which memory locations correspond to a location, or pixel, on a color monitor, or other type of display."[5]

In many modern computer systems, frame buffers are stored in dynamic random access memory—"DRAM." DRAM is a special type of computer memory with rows and columns of memory cells built with one

_____

[5]    Hamilton Decl., Ex. 11 at 5.

transistor and one capacitor per cell.[6] The capacitor within each memory cell holds information by holding an electric charge. To store the 1's and 0's that make up digital information, each memory cell is either electrically charged—a 1—or not charged—a 0. The information stored in the rows and columns of a DRAM are read by detecting the presence or absence of an electrical charge in each memory cell.

DRAM memory cells are analogous to rows and columns of water buckets. In this analogy, the buckets represent the individual memory cells. The water in the buckets represents the electrical charge held by the capacitor in each individual memory cell. To read the information represented by the buckets, one need only to determine whether the buckets have water or not. If the bucket has water, it's counted as a 1. If it does not, it's counted as a 0.

DRAM has an additional relevant characteristic. Over time (measured in fractions of a second), the electrical charge in the DRAM capacitor leaks. If nothing is done, the charge leaks out and the data in the memory cell is corrupted. To prevent corruption, DRAM memory cells are "refreshed." To return to the water-bucket analogy, assume the buckets are leaking. A refresh operation in a DRAM is analogous to refilling the leaking buckets. How often the leaking buckets are refilled (i.e., refreshed) is called "refresh frequency."

## C.   The patents-in-suit relate to a purported improvement in graphics processing.

The supposed key innovation in the patents-in-suit was to address a purported bandwidth problem in prior art graphics systems. According to

---

[6]   *See NEC Corp. v. Hyundai Elec.*, 30 F.Supp.2d 561, 563–4 (E.D. Va. 1998) (generally discussing basic DRAM operation).

the patents-in-suit, prior art graphics systems included a graphics processor that processed the pixel data representing an image to be displayed on the screen. The graphics processor then wrote the data to a frame-buffer memory. The patents-in-suit claim that the frame-buffer memory was located in DRAM on a separate chip,[7] and that a "data bus" connected the graphics accelerator to the DRAM memory, allowing data to be transferred to and from those components.[8] This prior art design is shown in figure 1 from the '664 patent (right). The double-headed arrow numbered 19 in figure 1 represented the prior art data bus. According to the patents-in-suit, the bandwidth of the data bus limited system performance.[9]



**FIG. 1**
(PRIOR ART)

To solve the supposed data-bus-bandwidth problem, the patents-in-suit divided the frame buffer memory into two parts: One portion of the frame buffer was placed on the same chip as the graphics accelerator ("on-chip"), and the other portion was placed on a separate chip ("off-chip").[10] To communicate with the two portions of the frame buffer, the patents-in-suit claim a "data *distribution* bus" connected to both the on-chip and the off-chip portions of the frame buffer.[11] According to the patents-in-suit,

---

[7]    Hamilton Decl., Ex. 9 at 1:36–57.

[8]    *Id.*

[9]    *Id.* at 1:57–65.

[10]   *Id.* at 2:18–29.

[11]   *Id.* at 2:64–3:17, fig. 2 (emphasis added).

that data distribution bus distributes data between the on-chip portion of the frame buffer and the off-chip portion of the frame buffer.[12] Figure 2 from the '664 patent (below) shows the data distribution bus highlighted in blue connecting the on-chip portion of the frame buffer—DRAM 112—and the off-chip portion of the frame buffer—DRAM 114. Each claim at issue requires a data distribution bus through which the on-chip and off-chip portions of the frame buffer memory receive graphics data. Yet Shared Memory's infringement contentions have repeatedly failed to identify the data distribution bus.



**FIG. 2**

Several claims also require a specific distribution of data between the on-chip and off-chip portions of the frame buffer. These claims require that "the graphics accelerator *selectively distributes* display data" to each portion of the frame buffer based on "pre-defined display data distribution criteria."[13] Shared Memory also fails to disclose its infringement theory regarding this limitation.

The asserted claims of the '279 patent include an additional requirement related to the DRAM frame buffers. They require that the on-chip frame buffer have a higher refresh frequency than the off-chip frame buffer.[14] To return to the analogy discussed above, the asserted claims of

---

[12]   *Id*. at 3:12–18.

[13]   *Id*. at 6:41–44; Hamilton Decl., Ex. 10 at 6:8–12, 7:34–38 (emphasis added).

[14]   Hamilton Decl., Ex. 10 at 6:20–24, 7:8–12, 8:1–4.

the '279 patent require that the leaking buckets in the on-chip frame buffer memory element be "refilled" more often than the buckets in the off-chip frame buffer memory element. Further, the asserted claims of the '279 patent require that this arrangement—higher refresh frequency for on-chip and lower refresh frequency for off-chip—must "reduce on-chip power dissipation."[15] Shared Memory's infringement contentions are defective as to this limitation as well.

### D.     The Court found that Shared Memory's infringement contentions failed to comply with the Patent Local Rules.

Shared Memory has never been in compliance with the Court's Patent Local Rules. On September 16, 2010, Shared Memory served its original infringement contentions. This original set of infringement contentions failed to provide anything remotely approaching the specificity required by Patent L.R. 3-1.[16] After meeting and conferring, Shared Memory agreed to supplement and did so on October 1, 2010.[17]

Despite Shared Memory's agreement to provide the specificity required by the Patent Local Rules, Shared Memory's supplemental infringement contentions remained noncompliant. So, Nintendo (and separately Sony) moved to compel Shared Memory to supplement its infringement contentions.[18] In the motions to compel, Nintendo (and Sony)

---

[15]     *Id.*

[16]     Shared Memory's Patent L.R. 3-1(c) charts served September 16, 2010 are attached to the Hamilton Decl. as Exhibit 12.

[17]     Shared Memory's Patent L.R. 3-1(c) charts served Oct. 1, 2010 are attached to the Hamilton Decl. as Exhibits 1–8.

[18]     Dkt. ## 295, 301, 316.

identified specific limitations where Shared Memory's infringement contentions were noncompliant.[19]

Judge Chen agreed with Nintendo and Sony that the infringement contentions did not comply with the Patent Local Rules. On December 30, 2010, Judge Chen ordered Shared Memory to supplement its infringement contentions.[20] Judge Chen identified several limitations Shared Memory failed to identify with specificity in the accused devices, and directed that by January 31, 2011, Shared Memory must supplement its infringement contentions to bring them into compliance.[21]

Even though Judge Chen's Order was clear, Shared Memory failed to serve supplemental contentions by the January 31 deadline. In response to Nintendo and Sony's further motions, Judge Chen referred the matter to this Court.[22] On April 30, this Court ordered Shared Memory to amend its contentions by June 13, 2011, and continued the discovery stay until June 24, 2011.[23]

## E.    Shared Memory's amended infringement contentions fail to identify where key limitations can be found in the GameCube and Wii.

Shared Memory accuses Nintendo's GameCube and Wii of infringing claim 3 of the '664 patent, and claims 2, 6, and 8 of the '279 patent. These are the same claims Shared Memory previously asserted. The limitations at

---

[19]    Dkt. # 295 at 5:16–20, 6:23–7:6; Dkt. # 316 at 6:7–16.

[20]    Dkt. # 346 at 6:19–21.

[21]    *Id*. at 5:9–6:17.

[22]    Dkt. # 401.

[23]    Dkt. # 408.

issue in this motion are exemplified by claim 3 of the '664 patent, which is shown below with the elements at issue italicized:

> A shared memory graphics accelerator system that provides graphics display data to a display element for display thereby, the shared memory graphics accelerator system comprising: a central processing unit that generates graphics display data and graphics commands for processing graphics display data;
>
> an integrated graphics display memory element that includes both a graphics accelerator connected to receive graphics display data and graphics commands from the central processing unit and an on-chip frame buffer memory element connected to receive graphics display data from the graphics accelerator *via a display data distribution bus*; and
>
> an off-chip frame buffer memory element connected to receive graphics display data from the graphics accelerator *via the data distribution bus*;
>
> *wherein the graphics accelerator selectively distributes display data to the on-chip frame buffer memory element and to the off-chip frame buffer memory element based on pre-defined display data distribution criteria, and*
>
> *wherein the display data distribution criteria are predefined such that the graphics accelerator selectively distributes display data corresponding to fast moving images to the on-chip frame buffer memory element and display data corresponding to slowing [sic] moving images of [sic] the off-chip frame buffer memory element.*

**(1)   *Shared Memory fails to adequately identify where the data distribution bus limitation can be found in the accused devices.***

Each asserted claim requires that the graphics accelerator be connected by a data distribution bus to *both* the on-chip frame buffer and the off-chip frame buffer to share data between them. In the words of claim 3 of the '664 patent: The "on-chip frame buffer memory element [is]

connected to receive graphics display data from the graphics accelerator *via a display data distribution bus*"; the "off-chip frame buffer memory element [is] connected to receive graphics display data from the graphics accelerator *via the data distribution bus.*"

In Nintendo's original motion to compel, Nintendo contended that Shared Memory failed to identify where in the accused products the data distribution bus could be found. Judge Chen agreed that Shared Memory's disclosure of this element was insufficient, and ordered Shared Memory to supplement.[24]

Shared Memory's amended infringement contentions still do not disclose where in the GameCube and Wii the data distribution bus connected to the on-chip frame buffer can be found. Further, Shared Memory's amended contentions fail to disclose where in the Wii the data distribution bus connected to the off-chip frame buffer can be found. Both failures are discussed below.

**(a)** *For both the GameCube and Wii, Shared Memory failed to identify a data distribution bus connected to the on-chip memory.*

Shared Memory's disclosures are slightly different for the two accused products, but in each case they are deficient. Starting with the GameCube, Shared Memory's amended infringement contentions make *no new attempt* to identify a data distribution bus by which the identified on-chip memory receives data. In fact, the *only* change between Shared Memory's previous contentions and the amended contentions is a word-jumbled description, along with the observation that the data distribution bus is "too small to be seen. . . ."[25] These changes can be seen below. On

---

[24]   Dkt. # 346 at 6:2–4.

[25]   Hamilton Decl., Ex. 1 at 8; Dkt. # 416-1 at 10.

the left is Shared Memory's original inadequate contention. On the right is the amended contention with the only modifications highlighted. Shared Memory's amended contentions are nothing more than what Judge Chen rejected when he found that "SMG's vague contentions and conclusory statements invite Defendants and the Court merely to assume the presence of a data distribution bus."[26]





Shared Memory's only other identification of the supposed data distribution bus to the on-chip memory in the GameCube is again identical to the disclosure Judge Chen determined was defective. Just as it did before, Shared Memory relies on a Power Point slide plucked from the Internet (shown right) that



---

[26]    Dkt. # 346 at 6:2–4.

does not identify any particular circuitry meeting the data distribution bus limitation.[27] Shared Memory points to the double-headed arrows in the slide, guessing that the arrows must be the data distribution bus.

With respect to the Wii, Shared Memory's amended identification of a supposed data distribution bus for the supposed on-chip memory is similarly vague. The only new material Shared Memory provides is the image (shown right) of the purported on-chip frame buffer memory element and the purported graphics accelerator, with the same boilerplate language set forth above:



Shared Memory contends that the Wii includes the display data distribution bus, but "[t]hese connections are too small to be seen . . . ."[28]

Shared Memory's then repeats *exactly the same assertions* from its previous infringement contentions, which Judge Chen found inadequate.[29] Specifically, Shared Memory relies on class notes from a 2009 undergraduate course (shown right). Shared Memory points to the outline of a box labeled



---

[27]    Dkt. # 416-1 at 11, copied from Shared Memories contentions previous found insufficient provided at (hereinafter "copied from") Hamilton Decl., Ex. 1 at 9.

[28]    Dkt. # 346 at 6:2–4.

[29]    Dkt. # 416-5 at 15, copied from Hamilton Decl., Ex. 5 at 9.

"GPU," and claims that this is the "[b]us to eDRAM and off-chip memories." This is the *identical* disclosure Shared Memory previously made.[30] As with the GameCube, Shared Memory fails to meaningfully amend its contentions, fails to identify any circuitry in the Wii supposedly satisfying this limitation, and fails to disclose how the supposed bus distributes data.

**(b)**   *Shared Memory fails to identify a data distribution bus to the Napa memory in the Wii.*

With respect to the Wii, Shared Memory's infringement contentions allege that there are two different memories that each separately satisfy the limitation "an off-chip frame buffer memory element": a memory referred to as a GDDR3, and a separate memory referred to as "Napa."

As discussed above, the asserted claims require that the "off-chip frame buffer memory element [is] connected to receive graphics display data from the graphics accelerator *via the data distribution bus*." Because Shared Memory purports to identify two different elements meeting the off-chip frame buffer memory element, Shared Memory must show a data distribution bus connected to both. Put slightly differently, Shared Memory must identify the data distribution bus connected to the GDDR3, and the supposed data distribution bus connected to Napa.

In the only meaningful amendment Shared Memory made in its infringement contentions, Shared Memory attempts (albeit incorrectly) to identify the data distribution bus connected to the GDDR3—one of the two supposed off-chip frame buffers. So, Nintendo does not move to strike that contention.

---

[30]   Dkt. # 416-5 at 15, copied from Hamilton Decl., Ex. 5 at 9.

By contrast, Shared Memory makes no attempt to amend its disclosure pertaining to the data distribution bus connected to the other supposed off-chip frame buffer—Napa. Instead, Shared Memory simply repeats its earlier defective contentions. Shared Memory again relies exclusively on class notes from a 2009 undergraduate course (shown right). Shared Memory points to the outline of a box labeled "GPU," and claims that this is the "[b]us to eDRAM and off-chip memories." Exactly as it did in its prior iteration, Shared Memory points to a separate page of class notes and highlights the phrase: "3.9 GB/s peak bandwidth between Vegas and memory on Napa."[31]



These disclosures regarding the supposed data distribution bus to Napa are exactly the same disclosures Shared Memory previously made, and that Judge Chen already rejected.[32] Simply put, Shared Memory made no amendments at all on this critical element.

**(2)    *The "selectively distributes," and "fast-and-slow-moving images" limitations.***

As discussed above, three of the four asserted patent claims require a specific distribution of data between the on-chip and off-chip frame buffer memories. Claim 3 of the '664 patent requires that:

---

[31]    Dkt. # 416-5 at 20, copied from Hamilton Decl., Ex. 5 at 16.

[32]    Dkt. # 346 at 6:2–4.

the graphics accelerator *selectively distributes* display data corresponding to fast moving images to the on-chip frame buffer memory element and display data corresponding to slowing [sic] moving images of [sic] the off-chip frame buffer memory element.

Claim 2 of the '279 patent requires that:

the graphics accelerator *selectively distributes* pixel display data corresponding to images requiring a first memory access time to the on-chip frame buffer memory element and pixel display data corresponding to images requiring a second access time slower than the first access time to the off-chip frame buffer memory element.

And claim 8 of the '279 patent requires that:

the graphics accelerator *selectively distributes* pixel display data to the on-chip frame buffer memory element and to the off-chip frame buffer memory element based on pre-defined display data distribution criteria.

Shared Memory's previous infringement contentions simply alleged that Nintendo's devices satisfied these limitations without any further explanation. Instead, Shared Memory took the position that "it need not provide specific contentions for [these] elements [because they are] modified by a 'wherein' clause."[33] But Judge Chen rejected this argument, and ordered Shared Memory to address these limitations.[34]

In response to Judge Chen's order, Shared Memory's amended contentions use *the same slides and information set forth in the rejected contentions*. Indeed, the only difference between Shared Memory's rejected contentions and its amended contentions is a figure that does not show anything related to selectively distributing data along with the boilerplate

---

[33]   Dkt. # 346 at 6:9–11.

[34]   Dkt. # 346 at 6:14–16.

that Shared Memory makes its contention (shown right) on "information and belief" and that "proof" of Shared Memory's speculation requires discovery.[35]



On information and belief, the graphics accelerator (D) selectively distributes display data to the on-chip frame buffer memory element (E) and to the off-chip frame buffer memory element (G) based on pre-defined display data distribution criteria. Proof of such selective distribution requires discovery of Nintendo's relevant software, source code, RTL and firmware. SMG reserves the right to supplement.

The only other information Shared Memory provides is copied verbatim from its previously rejected contentions. For both the GameCube and Wii, Shared Memory quotes an Internet news source:

> Both internal memory buffers have a sustained latency of under 5 nanoseconds. The frame and z-buffer memory is capable of 9.6 Gbytes/second of bandwidth. The texture buffer boasts an even faster bandwidth of 12.8 Gbytes/s....
>
> The GameCube uses 1T-SRAM, this time as 24 Mbytes of external memory. Operating at a 405-MHz clock speed, the memory moves data at 3.2 Gbytes/s, with a sustained latency of 10 ns.[36]

Judge Chen previously held that this information is insufficient.[37] Further, just as it failed to do before, Shared Memory has not linked these observations to the claim elements, does not explain how these

---

[35]   Dkt. # 416-1 at 15–18; Hamilton Decl., Ex. 1 at 13–16.

[36]   Dkt. ## 416-1 at 17, 416-5 at 24, copied from Hamilton Decl., Ex. 1 at 14, Ex. 5 at 20.

[37]   Dkt. # 346 at 6:14–17.

observations show that the limitations are satisfied, and does not disclose its infringement position based on these observations.[38]

**(3)** ***The "refresh frequency" and "power dissipation" limitations.***

As explained above, all the asserted claims in the '279 patent require a specific refresh frequency relationship between the on-chip and the off-chip memories to reduce on-chip power dissipation.

Claims 2 and 8 of the '279 patent require:

> wherein a refresh frequency of the on-chip frame buffer memory element is higher than a refresh frequency of the off-chip frame buffer memory element to reduce on-chip power dissipation.

And claim 6 of the '279 patent requires:

> wherein the on-chip frame buffer memory element has a second refresh frequency requirement that is higher than the first refresh frequency requirement of the off-chip frame buffer memory element to reduce on-chip power dissipation.

In its original contentions, Shared Memory essentially ignored these limitations. Judge Chen, however, required Shared Memory to provide more specific contentions for these limitations too.[39] But in Shared Memory's amended contentions, Shared Memory largely ignores these limitations again, adding only that the limitations are satisfied "on information and belief," and that "additional evidence" requires discovery.[40] Shared Memory provides no basis for its "information and belief," thus providing no new information on this limitation whatsoever, despite Judge Chen's Order.

---

[38]   Dkt. ## 416-1 at 16–18, 416-5 at 23–26, copied from Hamilton Decl., Ex. 1 at 13–18, Ex. 5 at 20–26.

[39]   Dkt. # 346 at 6:14–16.

[40]   Dkt. #416-2 at 21.

3.   ARGUMENT

A.   **The Patent Local Rules and Rule 11 establish the minimum standards for infringement charts.**

Patent Local Rule 3-1(c) requires a patentee to include in its infringement contentions a chart, "identifying specifically where each limitation of each asserted claim is found within each Accused Instrumentality." As the court noted in *Intertrust Techs. Corp. v. Microsoft Corp.*, the "overriding principle of the Patent Local Rules is that they are designed [to] make the parties more efficient, to streamline the litigation process, and to articulate with specificity the claims and theory of a plaintiff's infringement claims."[41]

To make the parties more efficient, the patentee must disclose a minimum level of detail about its infringement theory. As set forth in *Network Caching Tech., LLC v. Novell, Inc.*, the minimum specificity required by Rule 3-1 is set by Federal Rule of Civil Procedure 11: "[T]he standard of FRCP 11 prefiling inquiry establishes the minimum level of detail that Patent LR 3-1 requires."[42] The court also held that the minimum level of prefiling investigation required by Rule 11 is "reverse engineering or its equivalent."[43]

Where, as here, a party fails to comply with the Patent Local Rule's disclosure requirements, the court may fashion "just orders," including "prohibiting the disobedient party from supporting . . . designated

---

[41]   No. 01-1640-SBA, 2003 WL 23120174, at *2 (N.D. Cal. Dec. 1, 2003).

[42]   No. 01-2079-VRW, 2002 WL 32126128, at *4 (N.D. Cal. Aug. 13, 2002).

[43]   *Id.* at *5.

claims . . . , or from introducing designated matters into evidence."[44]
The Federal Circuit in *O2 Micro Int'l v. Monolithic Power Sys.* found that the
Northern District of California's Patent Local Rules regarding infringement
contentions "are essentially a series of case management orders," and that
a court "may impose any 'just' sanction for the failure to obey."[45] The
Federal Circuit also noted that sanctions could include "refusing to allow
the disobedient party to support or oppose designated claims or defenses,
or prohibiting that party from introducing designated matters into
evidence."[46] In affirming the district court's decision to preclude
amendment of infringement contentions, the Federal Circuit noted that
"[d]ecisions enforcing local rules in patent cases will be affirmed unless
clearly unreasonable, arbitrary, or fanciful; based on erroneous conclusions
of law; clearly erroneous; or unsupported by any evidence."[47]

**B.    Shared Memory's amended contentions do not identify a data
distribution bus.**

The data distribution bus limitation requires Shared Memory to
identify in the GameCube and Wii (1) where the data distribution bus
connected to the supposed on-chip frame buffer can be found, and (2)
where the data distribution bus connected to the supposed off-chip frame
buffer can be found. Shared Memory fails to identify the bus, let alone how
both the alleged on-chip and off-chip memories are connected to the
alleged data distribution bus.

---

[44]    Fed. R. Civ. P. 37(b)(2)(A)(ii).

[45]    467 F.3d 1355, 1363 (2006) (affirming district court's denial of leave
to amend infringement contentions)

[46]    *Id*. (citing Fed. R. Civ. P. 16(f) & 37(b)(2)(B)).

[47]    *Id*. at 1367-68.

**(1)** ***Shared Memory's contentions regarding a data distribution bus to the alleged on-chip memory are insufficient and should be stricken.***

For both the GameCube and Wii, Shared Memory fails to identify any specific circuitry as the supposed data distribution bus through which the supposed on-chip frame buffer memory element receives graphics data. Instead Shared Memory claims that the data distribution bus is "too small to be seen," but that it "must" be there.

Shared Memory's amended infringement contentions do nothing to correct Shared Memory's original failure to disclose. Adding boilerplate that the connections are "too small to be seen" provides no new information that Nintendo did not have before. Further, this very argument—we don't need to identify a data distribution bus to the on-chip frame buffer because it's too small to be seen—is the argument Shared Memory made—and lost—in opposition to Nintendo's original motion.[48] As this its-too-small-to-be-seen boilerplate is the *only change* to the amended contentions, Shared Memory fails to comply with Judge Chen's Order.

Furthermore, Judge Chen was correct in requiring Shared Memory to amend in the first instance. Infringement contentions like Shared Memory's that rely on rank speculation that an accused product must contain a claim element have been repeatedly—and soundly—rejected by this district. For instance, in *Bender v. Maxim Integrated Prods., Inc.*,[49] the plaintiff included speculative claim charts much like Shared Memory's. In that case, Bender's patent included a limitation concerning a "first current rail." Bender's claim chart stated that "[w]ithout current rails to provide

---

[48]   Dkt. # 312 at 6:18–22.

[49]   No. 09-01152-SI, 2010 WL 2991257 (N.D. Cal. July 29, 2010).

power to the buffers, the buffers will not function," and that "[t]he current rails are not shown in the datasheet  . . .  because it is understood that a power source is required."[50] In rejecting Bender's charts, the court held, "plaintiff may not (1) ask the Court 'to assume that certain elements of the patent are present in the accused product,' [or] (2) 'remedy the current inadequacy of the infringement contentions merely by circling portions of a commercially available datasheet. . . .'"

The court further found that Bender's "assumptions are insufficient to support plaintiff's obligation under Patent Local Rule 3-1 to provide [defendant] with 'fair notice as to where the alleged infringing [elements] are located' within the accused products."[51] And while the court ultimately gave the plaintiff another opportunity to amend its contentions, the court did not require the defendant "to produce its schematics"[52] and warned the plaintiff that "[in] the event plaintiff's amended contentions are still deficient, the Court will be prepared to  . . .  strike the contentions and to dismiss this action."[53]

As Judge Chen already found, relying on it-must-be-there speculation is insufficient under the Patent Local Rules. And simply adding that "the connections are too small to be seen" to the images Shared Memory already used doesn't fix the problem. Shared Memory's amended contentions leave Nintendo in *exactly* the same position it would be without Shared Memory's claim charts: Nintendo knows that Shared Memory *believes* the data distribution bus is there. But Nintendo doesn't know what

[50]   *Id.* at *2.

[51]   *Id.* (quoting *Bender v Infineon Techs. N. Am. Corp.*, No. 09-2112 JW, 2010 WL 964197 (N.D. Cal Mar. 16, 2010)).

[52]   *Id.* at *5.

[53]   *Id.* at *6.

circuitry Shared Memory contends constitutes the data distribution bus. If Shared Memory's infringement claim charts are to have any meaning, they must, at a minimum, disclose where this critical circuitry allegedly can be found.

Shared Memory has been warned that it needed to provide more detail on this specific limitation, and Shared Memory has had more than six months to get this right. Instead of using that time to develop its theory, Shared Memory copied its insufficient infringement contentions. Accordingly, Shared Memory's contentions regarding the data distribution bus to the on-chip frame buffer should be stricken, and Shared Memory should be precluded from further amending the contentions.

**(2)**   ***Shared Memory's contentions regarding the data distribution bus to the alleged Napa off-chip frame buffer are insufficient and should be stricken.***

Shared Memory has also failed to comply with Judge Chen's order to supplement with respect to a data distribution bus through which the Napa memory receives graphics data. As shown above, Shared Memory claims that Napa is one of two off-chip portions of the frame buffer. So, Shared Memory must show the data distribution bus to Napa. Yet Shared Memory merely regurgitates its previous disclosures pertaining to this limitation, doing nothing to meaningfully amend its disclosures.

Indeed, the absence of disclosure with respect to Napa is particularly noticeable in light of Shared Memory's amendment with respect to the supposed data distribution bus to the other supposed off-chip frame buffer—the GDDR3. With respect to the GDDR3, Shared Memory included new disclosures it had not previously provided. And while substantively

Shared Memory's disclosure with respect to the GDDR3 is wrong, at least Shared Memory did *something* to try to amend.

By contrast, with respect to the Napa memory, Shared Memory rests entirely and exclusively on the disclosures Judge Chen has already rejected. But Shared Memory's speculation that a data distribution bus "must" be there was not enough before. It is still not enough. As such, Shared Memory's contentions related to the data distribution bus to the Napa memory should be stricken, and Shared Memory should be precluded from further amending its contentions in this regard.

**(3)   Shared Memory's contentions related to the "selectively distributes," "refresh frequency," and "power dissipation" limitations should be stricken.**

With respect to the "selectively distributes," "refresh frequency," and "power dissipation" limitations, Shared Memory actually takes a step back in its amended contentions, providing *less* information than it did before. This is so because in its original contentions Shared Memory claimed that the accused products "must" meet these limitations. This was obviously not enough to satisfy Shared Memory's Patent Local Rules obligations, and Judge Chen so held. But now Shared Memory won't even go this far. Instead, Shared Memory hedges its bets, hoping to avoid a Rule 11 problem down the road, and only claims that it is "informed and believes" that the products *might* meet these limitations. Armed only with this "information and belief," Shared Memory wants to take the wraps off this case, dive into Nintendo's most highly confidential source code, and hope for the best.

But Judge Chen has already ordered that Shared Memory must sufficiently address these limitations in the amended infringement contentions. Shared Memory has done literally *nothing* to improve its

deficient infringement contentions, despite the six month respite between Judge Chen's Order and this Court's deadline to amend. The conclusion must be that Shared Memory cannot meet its obligations. As such, the Court should strike Shared Memory's contentions related to the "selectively distributes," "refresh frequency," and "power dissipation" limitations, and preclude Shared Memory from further amending its contentions.

### C.   Discovery should be stayed pending resolution of this motion.

Judge Chen stayed discovery against Nintendo because Shared Memory failed to meet its Patent Local Rule obligations in its infringement contentions. Nothing has changed because Shared Memory did not meaningfully amended its contentions. As Judge Chen previously held, this Court's infringement contentions perform a gate-keeping function, which Shared Memory has not satisfied. Consequently, discovery should remain stayed pending resolution of this motion. To the extent necessary, Nintendo will file a separate motion for protective order.

### 4.   CONCLUSION

Despite multiple opportunities, a court Order, and nearly six months lead time, Shared Memory still failed to meaningfully amend its infringement contentions. Instead, Shared Memory repeated the same contentions for several key limitations that Judge Chen previously found inadequate. Thus, Nintendo respectfully requests that the Court enter an order (1) striking portions of Shared Memory's infringement contentions

///

///

///

related to those limitations; and (2) precluding Shared Memory from further amending its infringement contentions. Nintendo further requests that discovery remain stayed pending resolution of this motion.

June 24, 2011                          PERKINS COIE LLP

                                       By:    /s/   *Grant Kinsel*
                                          Grant Kinsel, Bar No. 172407

                                       Attorneys for NINTENDO CO., LTD,
                                       AND NINTENDO OF AMERICA INC.